UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                      Case No. 11-50702

MARIANNE JONES HAUSWIRTH,                                   Chapter 7

               Debtor.                     Judge Thomas J. Tucker
_____/

JEFFREY L. HAUSWIRTH,

               Plaintiff,

v.                                                          Adv. Pro. No. 11-6100

MARIANNE JONES HAUSWIRTH,

               Defendant.
_____/

**OPINION REGARDING PLAINTIFF JEFFREY L. HAUSWIRTH'S
MOTION FOR SUMMARY JUDGMENT**

      In this adversary proceeding, Plaintiff Jeffrey L Hauswirth ("Jeffrey") filed a complaint seeking a determination that two debts allegedly owing by Defendant/Debtor Marianne Jones Hauswirth ("Marianne") arising out of a December 11, 2009 Consent Judgment of Divorce (the "Divorce Judgment") are nondischargeable under 11 U.S.C. § 523(a)(5) (Count I), or alternatively, under 11 U.S.C. § 523(a)(15) (Count II).[1] Jeffrey alleges that these debts are obligations that the Divorce Judgment imposed on Marianne to pay (1) half of a debt owing to Oakland Commerce Bank ($42,358), and (2) the entire debt owing to Citibank on a student loan ($42,098).[2] Jeffrey was liable for both of these debts before entry of the Divorce Judgment, and

---

[1] Compl. (Docket # 1)

[2] *Id.* at 2 ¶ 9.

the Divorce Judgment did not release Jeffrey from such liability, as between Jeffrey and the creditors.[3]

Jeffrey has filed a motion for summary judgment, which Marianne opposes.[4] The Court concludes that a hearing on the motion is not necessary. The Court further concludes that if and to the extent there is any debt owing by Marianne under the Divorce Judgment, such debt is fully nondischargeable in Debtor's Chapter 7 case, under either 11 U.S.C. § 523(a)(5) or 11 U.S.C. § 523(a)(15). It does not matter which statute the debts fall under — *i.e.*, § 523(a)(5) or § 523(a)(15) — because the debts are nondischargeable in Marianne's Chapter 7 bankruptcy case under either statute.

## I. Facts

### A. The Divorce Judgment

The material facts are not in dispute. Jeffrey and Marianne were once married. On December 11, 2009, the Oakland County, Michigan Circuit Court entered the Divorce Judgment between Jeffrey and Marianne, with their consent.[5] Paragraph 13 of the Divorce Judgment, under the caption "Property Division," provides:

> The division of assets and liabilities in this matter shall be pursuant to a Settlement Agreement dated August 31, 2009, (Agreement) including attachment 1, which is incorporated and merged into this [Divorce] Judgment, but which shall not be attached to this [Divorce] Judgment nor included in the Court's file. Said Agreement shall have the full attributes and effect as if fully contained and reiterated in this [Divorce] Judgment, but shall not

---

[3] *See id.* at 2 ¶¶ 9-10.

[4] Docket ## 21, 27.

[5] Ex. A. of Pl.'s Compl. (Docket # 1).

2

be attached to this [Divorce] Judgment in order to protect the
privacy of the parties.

Paragraph 9 of the Settlement Agreement provides:

Debt: The debts of the parties shall be shared pursuant to
Attachment 1. Each party is responsible for their share of the debt
effective September 1, 2009 except as specified herein. Each party
shall assume, pay timely and hold the other harmless from one half
of these obligations. There shall be no further joint debt incurred.
Except as specified in this Agreement, each party is responsible for
their own individual debt without contribution or responsibility of
the other party.[6]

On Attachment 1 to the Settlement Agreement, under the caption "Debt:," there is handwriting which indicates that the following two debts are the two debts at issue:

| | | | |
|---|---|---|---|
| Oakland Commerce Bank | (125,000) | (82,642) **66.1%** | (42,358) **33.9%** |
| Citibank student loan # 24 | (42,098) | | (42,098)[7] |

---

[6] Ex. B of Pl.'s Compl. (Docket # 1) at 4-5. In Marianne's answer to the complaint, Marianne states that "[she] does not believe Exhibit B is an accurate copy of the Settlement Agreement." (Docket # 7 at ¶ 8.) However, this assertion is without merit, and Marianne has implicitly, if not expressly, withdrawn this assertion. Marianne has produced another copy of the Settlement Agreement labeled as Exhibit A, which is identical to the Settlement Agreement produced by Jeffrey at Exhibit B of the complaint, with the following exceptions: (1) Marianne's version contains certain check marks and numbers that are handwritten on the typed document but not initialed by the parties; (2) Marianne's version does not black out certain personal information blacked out by Jeffrey; (3) Marianne's version does not contain a document labeled in handwriting as "Attachment 1" and initialed by the parties, which contains a list of the debts of the parties, and which is referred to in the Settlement Agreement; and (4) Marianne's version contains an attachment labeled "Marianne and Jeffrey Hauswirth," which contains a 3-page list and the value of assets comprising the marital estate. (*See* Def.'s Br. in Supp. of Response to Pl.'s Mot. For Summ. J. (Docket # 27) at .pdf p.89.) Paragraph 9 of both Jeffrey's and Marianne's version of the Settlement Agreement are identical. In addition, Marianne quotes the language of Paragraph 9 of the Settlement Agreement verbatim in her affidavit in support of her response to Jeffrey's motion for summary judgment (*see id.* at pdf. p.18 ¶11), and she also references Attachment 1 and acknowledges the 66.1% and 33.9% split of the debt to Oakland Commerce Bank between the parties under Attachment 1 (*see id.* at .pdf p.13)(citation omitted).

[7] Ex. B of Compl. (Docket # 1) at pdf. p.28 (bold added). The label "Attachment 1" on the document is handwritten and initialed by the Jeffrey and Marianne. The handwriting on Attachment 1 indicating which two debts of the list of debts are at issue in this adversary proceeding does not appear to
(continued...)

3

Although Attachment 1 to the Settlement Agreement states the total amount of debt owing to an identified entity and allocates the total amount between two columns, there is no heading above each column which indicates whether the allocated amount in the column is the obligation of Jeffrey or of Marianne. However, it is clear from the record that the amounts in the far right-hand column are the obligations of Marianne, as Jeffrey alleges. Marianne admits to an e-mail dated December 29, 2009, from Marianne to Jeffrey regarding "Loan Payment Discussion," in which Marianne admits owing 33.9% of the debt to Oakland Commerce Bank:

> I have been advised to leave everything as is. The loan is in your name, you are the personal guarantor of that loan and I will continue to meet my obligations of 33.9% in a timely manner every month as stipulated in the divorce settlement. If there is a way to communicate the percentage amount due by me to Oakland Commerce Bank by the 18th of every month in order for meet the banks due date of the 26th I would welcome a solution to that.[8]

In an e-mail to Marianne from Tom Perkins of Michigan Commerce Bank (formerly Oakland Commerce Bank),[9] dated December 30, 2009, in response to a communication by Marianne, Mr. Perkins indicates his knowledge of the portion of the debt to the bank, owing by Marianne under the Settlement Agreement:

---

[7](...continued)
be part of the original document because it is an addition which has not been initialed by the parties, as are all other additions or deletions to the typewritten documents which together recite the terms of the Divorce Judgment. The percentages in bold are also handwritten and are not initialed, and so are also apparently not part of the original document.

[8] Docket # 27 at pdf. p.86. The typographical errors are in the original document.

[9] Marianne states in her response to Jeffrey's motion for summary judgment that Oakland Commerce Bank "became Michigan Commerce Bank." Def.'s Br. in Response to Pl.'s Mot. for Summ. J. (Docket # 27) at 10.

4

> Marianne; The Bank has reviewed your concerns, and has had a
> further discussion with Jeff. It is believed that the following
> structure will alleviate the issues your raised.
>
> The current obligation to the bank is $123,072.78. The debt is and
> will remain in the name of Jeffrey L. Hauswirth, but to facilitate
> billings that conform to the Settlement Agreement the debt will be
> split into separate notes, in the amounts of $81,787.53 (66.1%) and
> $41,945.49 (33.9%). Both notes will remain in Jeff's name and the
> note for $41,945.49 will be sent "care of" to your address at 583 N.
> Old Woodward, Birmingham, Mich. 48009. (Address supplied by
> Jeff) The payment amount of approximately $220.35 will also
> represent 33.9% of the total payment of $650.00. The notes will
> have a 12 month maturity. The relationship will be reviewed at
> that time.
>
> The bank wishes to conclude this matter as soon as possible and
> asks that you consent to this arrangement.[10]

Finally, Marianne admits in her response to Jeffrey's motion for summary judgment that her portion of the loan to Oakland Commerce Bank was $42,358. She states "As admitted by Plaintiff, 'Debtor's share of the [loan to Oakland Commerce Bank] was $42,358.00 at the time the Settlement was entered.' Plaintiff's share of the [loan to Oakland Commerce Bank] appears to be $88,642 based on Attachment 1 - a split of 66.1% and 33.9% between Plaintiff and Marianne respectively."[11]

With respect to the student loan debt to Citibank, Marianne argues in her response to Jeffrey's motion for summary judgment that under the Divorce Judgment, she can only be held liable to Jeffrey for one-half of the debt, at most. She states:

> As for the Citibank Student Loan # 24, Plaintiff admits that "[t]hat
> debt [Citibank Student Loan # 24] was to be paid entirely by
> Debtor." If the entire amount of Citibank Student Loan # 24 was

---

[10] Docket # 27 at .pdf p.86.

[11] Def.'s Br. in Response to Pl.'s Mot. For Summ. J. (Docket # 27) at 13.

5

assumed by Defendant as argued by Plaintiff, then the parties
agreed that Debtor shall "hold the other harmless from one half of
these obligations" or $21,049. Given the total original debt for
Citibank Student Loan # 24 of $42,098, Defendant would only be
liable to Plaintiff for the amount he pays to Citibank in excess of
$21,049 as this primary amount is Plaintiff's obligation without
any hold harmless requirement by Defendant.[12]

### B. Marianne's arguments in opposition to Jeffrey's summary judgment motion

Marianne makes both procedural and substantive arguments in opposition to Jeffrey's motion for summary judgment.

### 1. Procedural arguments

Marianne contends that the entry of summary judgment is premature because discovery has not been completed; that Jeffrey has provided Marianne with "incomplete and non-responsive discovery [responses], prejudicing [Marianne's] ability to meaningfully respond to the pending motion;" and that Marianne has a motion to compel discovery pending.[13] Marianne says that she needs discovery on (1) "the allocation of assets and liabilities at the time the Settlement Agreement was entered into;" (2) whether "[Marianne] may have a right of set off based upon the current obligations of [Jeffrey] as examined in [the] context of his obligations under the Settlement Agreement;" (3) whether "[Jeffrey] intentionally misrepresented his financial circumstances to [Marianne] during the course of the divorce and [whether] the Judgment of Divorce and Settlement Agreement, which [Jeffrey] now seeks to enforce, are based upon these

---

[12] *Id.* at 13-14 (citation omitted).

[13] *Id.* at 5.

6

gross misrepresentations."[14] Marianne claims that this information is needed, in part, to defend against Jeffrey's claim that the debts at issue are a "domestic support obligation" under 11 U.S.C. § 523(a)(5).[15]

**2. Substantive arguments**

Marianne's substantive arguments can be summarized as follows:

a. Jeffrey has not shown that the debts at issue are domestic support obligations under 11 U.S.C. § 523(a)(5), and provisions in the Divorce Judgment support a determination that the debts are not domestic support obligations.[16]

b. To the extent the Divorce Judgment obligated Marianne to pay a debt owing to Oakland Commerce Bank, Marianne no longer owes that debt because it no longer exists due to Jeffrey's refinancing of the loan giving rise to that debt.[17]

c. Marianne does not owe the full amount of the debts alleged by Jeffrey.[18]

d. Marianne may have a right of set-off against her obligations to Jeffrey.[19]

e. The Divorce Judgment was procured by fraud, and therefore, any obligations imposed on Marianne should be re-evaluated.[20]

---

[14] *Id.* at 4-7.

[15] *Id.* at 5-6.

[16] *Id.* at 7-10.

[17] *Id.* at 10-12.

[18] *Id.* at 12-14.

[19] *Id.* at 6.

[20] *See id.*

7

**II. Jurisdiction**

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157 (b)(1), and Local Rule 83.50(a) (E.D. Mich.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because, and to the extent, it involves a determination of dischargeability.

**III. Discussion**

11 U.S.C. §§ 523(a)(5) and 523(a)(15) provide:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> . . .
>
> (5) for a domestic support obligation;
> . . .
>
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

11 U.S.C. § 101(14A) defines "domestic support obligation." It provides:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
>
> > (A) owed to or recoverable by--
> >
> > > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

8

>>(ii) a governmental unit;

>(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

>(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

>>(i) a separation agreement, divorce decree, or property settlement agreement;

>>(ii) an order of a court of record; or

>>(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

>(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Marianne does not dispute that the Divorce Judgment was entered before Marianne filed her bankruptcy case, and that it imposed on Marianne the obligation to pay certain debts. In her brief in opposition to Jeffrey's motion for summary judgment, Marianne denies that the debts are domestic support obligations under § 523(a)(5). It is clear, however, that to the extent the debts are *not* "domestic support obligations," they are debts of the type described in § 523(a)(15).

9

Jeffrey argues this in his summary judgment motion, and in her response to the motion, Marianne does not deny this.

The fact that the Divorce Judgment obligates Marianne to pay Jeffrey's debts in question to the creditors, rather than directly to Jeffrey, does not alter this conclusion. Marianne's obligation is still a "debt . . . to a . . . former spouse of the debtor" within the meaning of § 523(a)(15). Marianne has not argued otherwise, and the Court agrees with the case law that supports this conclusion. *See, e.g.*, *Gibson v. Gibson* (*In re Gibson*), 219 B.R. 195, 202-03, 204-05 (B.A.P. 6th Cir. 1998); *In re Rogowski*, No. 10-72473, 2011 WL 6415346 at *6 (Bankr. E.D.N.Y. December 21, 2011); *see also Kassicieh v. Battisti* (*In Kassicieh*), 425 B.R. 467, 477-81 (Bankr. S.D. Ohio 2010)(quoting *Simon, Schindler & Sandberg, LLP v. Gentilini* (*In re Gentilini*), 365 B.R. 251, 256 (Bankr. S.D. Fla. 2007)(describing a "third line of authority," under which the "'debt to' element can be satisfied when the obligation is payable directly to a third party, typically a professional who provided services to benefit the wife or child, but only if the former spouse is also obligated for the fees").[21]

Because Marianne is in a Chapter 7 bankruptcy case, rather than a Chapter 13 case,[22] it does not matter whether the debts at issue are domestic support obligations under § 523(a)(5). As long as the debts fall under *either* § 523(a)(5) *or* § 523(a)(15), they are nondischargeable in

---

[21] The Court notes that the Divorce Judgment in this case contains a hold-harmless provision, through the judgment's incorporation of Paragraph 9 of the Settlement Agreement, which is quoted in Section I-A of this opinion. But the presence of such a provision is not necessary to the Court's conclusion that Marianne's obligation to pay certain of Jeffrey's debts is a "debt . . . to a . . . former spouse" within the meaning of § 523(a)(15). *See*, *e.g.*, *Gibson*, 219 B.R. at 204-05.

[22] In a Chapter 13 case, domestic support obligations under § 523(a)(5) are nondischargeable, but debts under § 523(a)(15) are dischargeable. *See* 11 U.S.C. § 1328(a)(2).

Marianne's Chapter 7 case. As the court explained in *Gustin v. Miller* (*In re Miller*), Adv. Pro. No. 08-50278, 2009 WL 212125, at *2 (Bankr. S.D. Ind. Jan. 27, 2009), all debts arising out of a divorce judgment are nondischargeable in a Chapter 7 case:

> [The 2009 Bankruptcy Code amendments known as] BAPCPA changed § 523(a)(5) in that it now merely provides for nondischargeability of a "domestic support obligation". "Domestic support obligation" in turn is defined in § 101(14[A]) as a debt owed to a spouse, former spouse or child of the debtor that is in the nature of alimony, maintenance or support "without regard to whether such debt is expressly so designated". The BAPCPA changes to § 523(a)(15) go even further. The balancing test has been eliminated and now, all that is needed for a debt to be nondischargeable under that section is that the debt must not be of the kind set forth in § 523(a)(5) and must be incurred by the debtor "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State .... law". The collective effect of the BAPCPA amendments to § 523(a)(5) and (a)(15) in chapter 7 cases is that it has eliminated the distinctions between "support and maintenance" and "property settlement" in that all debts, arising from a divorce decree from any court of record are nondischargeable. *See*, *In re Golio*, 393 B.R. 56, 61 (Bankr.E.D.N.Y.2008) ("As a result of BAPCPA, a property settlement obligation incurred pursuant to a divorce is unqualifiedly also nondischargeable under Section 523(a)(15). In individual chapter 7 [cases], the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship is of no practical consequence in determining the dischargeability of the debt ...").

*Id.*; *see also In re Rogowski,* No. 10-72473, 2011 WL 6415346, at *8 nn. 9, 10 (Bankr. E.D.N.Y. December 21, 2011)(internal quotation marks and citations omitted)("[b]ecause § 523(a) impacts all chapter 7 discharges granted under § 727, it is irrelevant whether those awards constitute true support obligations, because even if not encompassed within § 523(a)(5), they are nondischargeable pursuant to § 523(a)(15)," and after BAPCPA "any debt arising from a divorce

11

proceeding which would not fall under § 523(a)(5) is nevertheless excepted from discharge under § 523(a)(15)").

Because the debts at issue, whatever their amount may be, arise out of a divorce judgment entered by a Michigan court, they are either § 523(a)(5) debts or § 523(a)(15) debts, and are nondischargeable. Marianne does not dispute this either-or proposition. Because Jeffrey's motion for summary judgment seeks a determination that the debts are nondischargeable under either § 523(a)(5) or § 523(a)(15), the Court does not need to determine which nondischargeability provision applies, in order to find the debts nondischargeable. Jeffrey is entitled to a summary judgment of nondischargeability.

As a result of this, Marianne's procedural and substantive arguments, described above, do not matter for purposes of this adversary proceeding. With respect to Marianne's substantive arguments, the Court does not need to resolve them, except to say that these issues are irrelevant to the nondischargeability determination. Marianne's arguments that go to the question of what debts she is obligated to pay under the Divorce Judgment, and the amount of such debts, all should be directed to and decided by the state court that entered the Divorce Judgment, not by this bankruptcy court. All this Court need do, and should do, is determine that *if and to the extent such debts exist under the Divorce Judgment*, Marianne cannot discharge them in her Chapter 7 bankruptcy case.

Arguably, at least, this Court does not even have subject matter jurisdiction to determine the amount of Marianne's nondischargeable debts under the Divorce Judgment, under these circumstances. *Cf. Swain v. United States Dep't. of Treasury* (*In re Swain*), 437 B.R. 549 (Bankr. E.D. Mich. 2010)(bankruptcy court lacks subject matter jurisdiction to determine the

12

11-06100-tjt    Doc 32    Filed 01/26/12    Entered 01/26/12 12:37:59    Page 12 of 13

existence or amount of a debtor's disputed debt to the Internal Revenue Service in a no-asset Chapter 7 case, where the full amount of any such debt would be nondischargeable under 11 U.S.C. 523(a)(1)(A)). But even if this Court had such subject matter jurisdiction, the Court would abstain from deciding those issues, in favor of the state court doing so, under 28 U.S.C. § 1334(c)(1).[23]

**IV. Conclusion**

For the reasons stated by the Court in this opinion, the Court will enter an order granting Jeffrey's motion for summary judgment; determining that to the extent Marianne owes any debts under the Divorce Judgment, such debts are nondischargeable in Marianne's Chapter 7 case under either 11 U.S.C. §§ 523(a)(5) or 523(a)(15). If and to the extent Jeffrey's adversary proceeding complaint seeks any further relief than this, such as a money judgment quantifying the amount that Marianne is obligated to pay under the Divorce Judgment, the Court will dismiss this adversary proceeding, without prejudice.

**Signed on January 26, 2012**              /s/ Thomas J. Tucker
                                            **Thomas J. Tucker**
                                            **United States Bankruptcy Judge**

---

[23] This provision provides:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).